IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

WILLIAM D. CHANCELLOR and     :
MARY K. CHANCELLOR     :
       Plaintiffs     : No. 4:09-CV-2556
    :
       v.     : (JUDGE CONNER)
    : (MAGISTRATE JUDGE PRINCE)
DONALD J. BAKER, M.D and     :
BESTPRACTICES, INC.     :
       Defendant     :

## REPORT AND RECOMMENDATION

### I. Procedural Background

Pursuant to an Order entered on April 11, 2011 (Doc. 27) the Honorable

Christopher C. Conner referred the Defendants' pending motion for summary

judgment to the undersigned for the purpose of preparing a Report and

Recommendation.

Plaintiffs, William D. and Mary K. Chancellor,[1] initiated this medical

malpractice action by filing a complaint on December 29, 2009 (Doc. 1) in which

they assert diversity jurisdiction pursuant to 28 U.S.C. § 1332.  Named as

Defendants are Donald J. Baker, M.D., a resident of New York, and Bestpractices,

Inc., a corporation based in Virginia.

---

[1] Mary Chancellor, as the wife of William Chancellor, bring a claim for loss
of consortium

On February 1, 2011, Defendants filed a motion for summary judgment, a supporting brief and a statement of material facts.  (Docs. 18, 19, 20).[2]  Plaintiffs filed an answer to the statement of facts and a brief in opposition to the motion on February 24, 2011 (Docs. 24, 25).  Defendants filed a response to Plaintiffs' statement of other material facts on March 1, 2011.  (Doc. 26).  The matter is now ripe for disposition.  For the reasons that follow, it will be recommended that the Defendants' motion for summary judgment be denied.

## II. Factual Background

On July 7, 2008, Plaintiff William Chancellor presented at the Emergency Room of Williamsport Hospital in Williamsport, Pennsylvania complaining of acute pain that had begun the previous day.  He was transported to the hospital via ambulance.

According to the medical notes from the hospital, Dr. Baker first met with Plaintiff around 1 p.m. and took his medical history which included prior back pain.  From an initial examination of Plaintiff, Dr. Baker concluded that he had an acute exacerbation of lower back pain and prescribed pain medication and muscle relaxants.  After subsequently being informed that Plaintiff also had a high fever, Dr. Baker ordered tests, including a CBC, metabolic profile, urinalysis and X-rays

---

[2] The motion is captioned "Amended Motion for Summary Judgment."

of the chest and lumbar spine, to determine the cause of the elevated temperature.

The chest x-ray indicated "minimal anterior spondylosis" in the lower thoracic disc interspaces and the spine x-ray showed only mild posterior narrowing of the L4-L5 disc interspace.  Based on the tests performed, Dr. Baker believed that Plaintiff had a urinary tract infection ("UTI"), for which Dr. Baker prescribed Levaquin.  Plaintiff was also instructed to follow-up with his primary care physician or return to the hospital if the problems persisted.  He was not seen again by Dr. Baker after July 7, 2008.

On July 11, 2008, Plaintiff followed-up with his primary care physician, who ordered a CT scan believing Plaintiff was suffering from a possible renal stone or obstruction.  The scan showed no renal obstruction but did indicate some fluid around the gallbladder.  Plaintiff was admitted to Williamsport Hospital on that July 11, 2008 and remained there until he was discharged on July 18, 2008. During this time, Plaintiff was seen by a gastroenterologist regarding the source of his fever, but there was an inconclusive result, although a GI problem as the cause of the fever was doubtful.  A consultation by a urologist likewise failed to identify the source of the back pain and fever but expressed doubt it was urologic in origin. A neurosurgeon opined that the pain was multifactorial and that the source of the

fever was unclear.  Additionally, an infectious disease specialist reviewed test results and opined that there was a concern of vertebral diskitis.  Further review of Plaintiff by a pain management specialist resulted in a recommendation to discontinue all antibiotics based on his impression of  "lumbago . . . diskitis vs. severe spondylosis . . . lumbar disk displacement."

Following his release from Williamsport Hospital on July 18, 2008, Plaintiff experienced a period of remission, but then developed fever and back pain once again.  A blood test conducted on July 31, 2008 indicated the presence of staph aureus.  Upon readmittance to the hospital on August 1, 2008, Plaintiff was treated with intravenous antibiotics, which was continued after his discharge therefrom on August 7, 2008.  Upon an ultimate diagnosis of a spinal infection, Plaintiff underwent a laminectomy at L1-L4 on September 22, 2008.  Cultures on the removed materials were positive for the presence of staph.

The present action followed.

## III. Standard of Review

Federal Rule of Civil Procedure 56(c) requires the court to render summary judgment " . . . forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law." Fed.R.Civ.P. 56(c).  "[T]his standard provides that

the mere existence of <u>some</u> alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v.

Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A disputed fact is "material" if proof of its existence or nonexistence would

affect the outcome of the case under applicable substantive law.  <u>Anderson</u>, 477

U.S. at 248; <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992).

An issue of material fact is "genuine" if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party.  <u>Anderson</u>, 477 U.S. at 257;

<u>Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America</u>,

927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the

court must view the facts and all reasonable inferences in favor of the nonmoving

party.  <u>Moore v. Tartler</u>, 986 F.2d 682 (3d Cir. 1993); <u>Clement v. Consolidated

Rail Corporation</u>, 963 F.2d 599, 600 (3d Cir. 1992); <u>White v. Westinghouse

Electric Company</u>, 862 F.2d 56, 59 (3d Cir. 1988).  In order to avoid summary

judgment, however, the nonmoving party may not rest on the unsubstantiated

allegations of his or her pleadings.  When the party seeking summary judgment

satisfies its burden under Rule 56(c) of identifying evidence which demonstrates

the absence of a genuine issue of material fact, the nonmoving party is required by

Rule 56(e) to go beyond the pleadings with affidavits, depositions, answers to

interrogatories or the like in order to demonstrate specific material facts which

give rise to a genuine issue.  Celotex Corporation v. Catrett, 477 U.S. 317, 324

(1986).  The party opposing the motion "must do more than simply show that there

is some metaphysical doubt as to the material facts."  Matsushita Electric

Industrial Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).  When Rule 56(e) shifts

the burden of production to the nonmoving party, that party must produce

evidence to show the existence of every element essential to its case which it bears

the burden of proving at trial, for "a complete failure of proof concerning an

essential element of the nonmoving party's case necessarily renders all other facts

immaterial."  Celotex, 477 U.S. at 323.  *See* Harter v. G.A.F. Corp., 967 F.2d 846,

851 (3d Cir. 1992).

**IV. Discussion**

Under Pennsylvania law, a prima facie claim for medical malpractice

requires: (1) a duty owed by the physician to the plaintiff/patient; (2) a breach of

that duty; (3) the breach of duty was the proximate cause of, or a substantial factor

in, bringing about the injury; and, (4) damages suffered by the patient that were a

6

direct result of the injury or harm.  Mitzelfelt v. Kamrin, 584 A.2d 888, 891 (Pa.1990). In addition, a plaintiff is required to present expert witness testimony to support his claim. Id. at 892.  *See* Freed v. Geisinger Med. Ctr., 971 A.2d 1202, 1206 (Pa.2009) ("Expert testimony generally is required in a medical malpractice action in order to establish the proper standard of care, the defendant's failure to exercise that standard of care, and the causal relationship between the failure to exercise the standard of care and the plaintiff's injury.") (citing Hightower-Warren v. Silk, 698 A.2d 52, 54 (1997)); Toogood v. Rogal, 824 A.2d 1140, 1145 (Pa.2003) ("Because the negligence of a physician encompasses matters not within the ordinary knowledge and experience of laypersons[,] a medical malpractice plaintiff must present expert testimony to establish the applicable standard of care, the deviation from that standard, causation and the extent of the injury.") (citation omitted); Brannon v. Lankenau Hosp., 417 A.2d 196, 199-200 (Pa.1980).  The only exception to the requirement of expert testimony is in those cases where "the matter and investigation is so simple and the lack of skill or want of care is so obvious as to be within the range of ordinary experience or comprehension of even non-professional persons." Hardy v. Kreider, No.: 95-Civ-771, 1996 WL 583176, *9 (E.D. Pa. Oct. 10, 1996) (quoting Hoffman v. Mogil, 665 A.2d 478, 480 (Pa. Super. Ct. 1995)). An example of such a case is where a surgical tool or

instrument is left inside a patient. Id.

In the present action, the parties dispute whether Defendant Baker acted within the standard of care.  Defendants maintain that Dr. Baker saw Plaintiff on only one occasion, July 7, 2008, at which time he ordered numerous tests and performed a physical examination.  Based on the diagnostic information gathered, Dr. Baker asserts that he made a reasonable assessment of the symptoms, diagnosing Plaintiff with a UTI,  and treated him accordingly with Levaquin. Defendants argue, therefore, that the course of medical action was appropriate. They contend, moreover, that Plaintiff bring seen on this one occasion by Dr. Baker is insufficient basis upon which negligence may be found.

Plaintiffs argue, however, that there is disagreement by the experts for the parties as to whether the treatment of the Plaintiff fell within the applicable standard of care.  As a result of the differences, Plaintiffs maintain that summary judgment is not appropriate inasmuch as there are disputed issues of material fact.

In support of their claim, Plaintiffs have secured opinions from three (3) experts.  Dr. C.T. Fletcher, an emergency medicine expert, opined that the diagnosis of a UTI was unsupported by the physical exam of Plaintiff and the clean catch urinalysis.  Given the symptoms of a high fever of 104 degrees, an elevated WBC, and an onset of back pain, described by Plaintiff as pulsating and

being the worst pain he had ever experienced, Dr. Fletcher believes there was an

immediate need for blood cultures to be performed on July 7, 2008.  Dr. Fletcher

opined that Dr. Baker's treatment fell below the standard of care in that he failed

to obtain blood cultures, failed to admit Plaintiff to the hospital for further

evaluation and that he failed to consider a diagnosis other than a UTI.   In contrast,

Defendants offered the opinion of Dr. Arnold L. Lentnek, who offered an opinion

that the treatment of Plaintiff with levofloxicin for a possible UTI was appropriate.

He further noted that, given the lack of rigors and there being no correlation

between a fever and the likelihood of bacteremia in adults, there was no indication

for obtaining blood cultures.

Plaintiff also offered the expert report of Dr. D. Stewart MacIntyre, Jr., an

infectious disease specialist, who believes that Plaintiff had staphylococcos aureus

bacteremia (bacteria in the bloodstream) with an acute onset shortly before July 7,

2008.  Dr. MacIntyre argues this opinion is supported by the existence of a high

fever as well as the presence of staph in the urine which, he claims, evidences not

a UTI but the access of organisms from the bloodstream into the urine.  Based on

this assessment, Dr. MacIntyre contends that, had such a detection been made on

July 7, 2008 and treated accordingly with long-term intravenous antibiotics, the

infection would have terminated without the need for surgery.  He further opined

that the treatment with Levaquin for a UTI suppressed the infection and made its detection and diagnosis more difficult.

Further, Plaintiffs offered the opinion of Dr. David Sodor, a neurosurgical expert, who opined that Plaintiff's spinal damage, pain and disability were attributable to a delay in the proper diagnosis, as a result of which Plaintiff may need further surgery and is at an increased risk of infection over the span of his lifetime.  He further observed that Plaintiff has permanent damage which may cause him more pain and suffering, rendering him permanently disabled.

Based on the opinions the experts alone, summary judgment is not appropriate given the disputed material facts.  Defendants argue that the treatment of Plaintiff was within the appropriate standard of care.  However, Plaintiffs contend that Dr. Baker deviated from the standard of case in his failure to obtain blood cultures prior to prescribing Levaquin, coupled with the resulting delay in diagnosing the spinal infection due to the presence of Levaquin, which masked detection of the bacteria.  Thus, despite treating Plaintiff on only one occasion, there is a dispute as to whether the treatment of Plaintiff fell below the standard of care.  Inasmuch as these disputed issues present questions of fact, not law, to be decided by the trier of fact, summary judgment is not warranted.  *See* Leader Technologies, Inc. v. Facebook, Inc., No. 2011 WL 1514701, *2 (D. Del. March

14, 2011) ("conflicting expert testimony raises genuine issues of material fact that are appropriate for consideration by a jury in the first instance and, hence, preclude summary judgment."); B–K Lighting, Inc. v. Fresno Valves & Castings, Inc., 375 F. A'ppx. 28, 32 (Fed. Cir. 2010); Rooney v. City of Philadelphia, 623 F. Supp.2d 644, 656 (E.D. Pa. 2009); Total Containment, Inc. v. Environ Prods., 1999 WL 717946, at *4 (Fed. Cir. Sept. 15, 1999) (recognizing that summary judgment is often inappropriate where case depends on "specific, plausible and detailed testimony by dueling expert witnesses"); Ethyl Corp. v. Borden, Inc., 427 F.2d 206, 210 (3d Cir.1970) (holding that court may not resolve "disputed and relevant factual issues on conflicting affidavits of qualified experts").

## V. Recommendation

The existence of several disputed issues of material fact precludes summary judgment.  It is respectfully recommended, therefore, that Defendants' motion for summary judgment (Doc. 18) be denied.


Date: April 28, 2011                         s/ William T. Prince
                                             William T. Prince
                                             United States Magistrate Judge